**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PAYAM ZERAAT** | ) |
| 880 N. Pollard Street, Apt. 202 | ) |
| Arlington, VA 22203 | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| **THE DISTRICT OF COLUMBIA GOVERNMENT** | ) |
| Serve: The Honorable Muriel Bowser | ) |
| Mayor, District of Columbia | ) |
| 1350 Pennsylvania Avenue NW | ) |
| Washington, D.C. 20004; | ) |
| | ) |
| Also serve: Office of the Attorney | ) |
| General for the District of Columbia | ) |
| 441 4th Street NW, Suite 600 South | ) |
| Washington, D.C. 20001; | ) |
| | ) Civil Action No.: _____ |
| And | ) |
| | ) **JURY TRIAL DEMANDED** |
| **DISTRICT OF COLUMBIA BOARD OF** | ) |
| **ELECTIONS AND ETHICS** | ) |
| Serve: The Honorable Muriel Bowser | ) |
| Mayor, District of Columbia | ) |
| 1350 Pennsylvania Avenue NW | ) |
| Washington, D.C. 20004; | ) |
| | ) |
| Also serve: Office of the Attorney | ) |
| General for the District of Columbia | ) |
| 441 4th Street NW, Suite 600 South | ) |
| Washington, D.C. 20001; | ) |
| | ) |
| And | ) |
| | ) |
| **CECILY COLLIER-MONTGOMERY** | ) |
| Director, Office of Campaign Finance, | ) |
| in her official and individual capacities, | ) |
| Serve: The Honorable Muriel Bowser | ) |
| Mayor, District of Columbia | ) |
| 1350 Pennsylvania Avenue NW | ) |
| Washington, D.C. 20004; | ) |
| | ) |

1

Also serve: Office of the Attorney )
General for the District of Columbia )
441 4th Street NW, Suite 600 South )
Washington, D.C. 20001; )
)
And )
)
**WILLIAM SANFORD** )
General Counsel, Office of Campaign Finance, )
in his official and individual capacities, )
     Serve: The Honorable Muriel Bowser )
     Mayor, District of Columbia )
     1350 Pennsylvania Avenue NW )
     Washington, D.C. 20004; )
)
     Also serve: Office of the Attorney )
     General for the District of Columbia )
     441 4th Street NW, Suite 600 South )
     Washington, D.C. 20001; )
)
And )
)
**MICHAEL BENNETT** )
Chairman, D.C. Board of Elections and Ethics )
in his official and individual capacities, )
     Serve: The Honorable Muriel Bowser )
     Mayor, District of Columbia )
     1350 Pennsylvania Avenue NW )
     Washington, D.C. 20004; )
)
     Also serve: Office of the Attorney )
     General for the District of Columbia )
     441 4th Street NW, Suite 600 South )
     Washington, D.C. 20001; )
)
     *Defendants.* )
)

## COMPLAINT

COMES NOW, Plaintiff Payam Zeraat ("Plaintiff") by and through undersigned counsel,

and files this Complaint against the District of Columbia, District of Columbia Board of

Elections and Ethics, Cecily Collier-Montgomery, William Sanford, and Michael Bennett in

regard to continued his former employer's continued disability discrimination and failure to accommodate Plaintiff's disability, as well as Defendants' retaliatory misconduct and wrongful discharge of Plaintiff's employment. In further support thereof, Plaintiff states as follows:

## NATURE OF THE ACTION

1.     This employment discrimination and whistleblower action arises out of the latter half[1] of Defendants' continued unlawful conduct.  Plaintiff asserts the following claims:

a. Disability Discrimination, Failure to Accommodate, and Retaliatory Discharge in violation of Title I of the Americans with Disabilities Act as amended, 42 U.S.C. §§ 12101 et seq. ("ADA") and the Rehabilitation Act of 1973 § 501 *et seq.*, and the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.* ("DCHRA");

b. Retaliation and Wrongful Termination in violation of the First Amendment of U.S. Constitution, 42 U.S.C. § 1983, the District of Columbia Whistleblower Protection Act as amended, D.C. Code §§ 1-615-51 *et seq.* ("DCWPA"), the DCHRA; and District of Columbia public policy; and

c. Intentional Infliction of Emotional Distress in violation of D.C. common law.

## JURISDICTION & VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3.     This Court further has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper pursuant to U.S.C. § 1391, in that all events giving rise to this action occurred within the District of Columbia unless otherwise stated.

---

[1] Plaintiff filed Civil Action No.: 1:18-cv-002866 (TJK) on December 6, 2018 in regard to claims arising out of the first series of Defendants' discriminatory and retaliatory misconduct.  Due to the 180-day administrative exhaustion requirement and the attenuation–yet related–instances of discrimination, Plaintiff files this action pertaining to the events omitted from his first Complaint.

## PARTIES

5.      Plaintiff Payam Zeraat ("Plaintiff") is a Virginia resident and the former Investigator for the Office of Campaign Finance ("OCF")–a subordinate office of the District of Columbia Board of Elections and Ethics ("DCBOE").  Plaintiff was and is a qualified individual and disabled person in that Plaintiff suffers from post-traumatic stress disorder ("PTSD") which he developed after exerting rescue efforts at the Pentagon in the wake of the September 11, 2001.

6.      Defendant the District of Columbia, a municipal corporation located at 411 4th Street NW, Washington, D.C. 20001, is Plaintiff's former employer and a covered entity within the meaning of the ADA, Rehabilitation Act, DCWPA, and DCHRA.  The District of Columbia is responsible for the supervision and operation of its subordinate offices and agencies, including the District of Columbia Board of Elections and Ethics (and OCF).

7.      Defendant the District of Columbia Board of Elections and Ethics ("DCBOE"), an agency of the District of Columbia located at 1015 Half Street SE, Suite 750, Washington, D.C. 20003, is responsible for *inter alia* administering elections, ballot access, and voter registration, as well as the supervision of its subordinate offices, including OCF.

8.      Defendant Cecily Collier Montgomery is DCBOE's OCF Director, the District of Columbia's agent, and Plaintiff's former direct supervisor. Defendant Collier-Montgomery is being sued in her official and individual capacities.

9.      Defendant William Sanford ("Defendant Sanford") is DCBOE's OCF General Counsel and the District of Columbia's agent. Defendant Sanford is being sued in his official and individual capacities.

10.      Defendant Michael Bennett ("Defendant Bennett") is DCBOE's Chairman, the District of Columbia's agent, and Defendant Collier-Montgomery and Sanford's direct

4

supervisor.  Defendant Bennett is being sued in his official and individual capacities.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.     On October 2, 2018, Plaintiff filed a complaint with the District of Columbia and initiated the required EEO Interactive Process regarding the incidents giving rise to this action.

12.     On October 18, 2018, Plaintiff completed the EEO Interactive Process and received his Exit Letter and Notice of Right to File a Formal Complaint.

13.     On October 30, 2018, Plaintiff filed his formal complaint with the Equal Employment Opportunity Commission ("EEOC").

14.     On January 9, 2019, Plaintiff filed his amendment to include charges of wrongful termination arising out of the same common nucleus of operative fact and otherwise ongoing discriminatory and unlawful conduct.

15.     On May 16, 2019, Plaintiff received his right-to-sue letter from the EEOC. *See* Exhibit 1.

16.     Plaintiff has exhausted all administrative remedies and complied with all conditions precedent to maintaining this action.

### FACTS

I.     **Context and Civil Action No.: 18-cv-002866 (TJK)**

17.     This action arises out of Defendants' continued discriminatory and retaliatory misconduct which initially began on May 14, 2018.

18.     Plaintiff filed Civil Action No.: 18-cv-002866 (TJK) on December 6, 2018 and filed his First Amended Complaint on April 15, 2019.

19.     For contextual purposes, Plaintiff incorporates by reference all factual allegations contained in his First Amended Complaint filed in Civil Action No.: 18-cv-002866

(TJK). *See* <u>Exhibit 2</u>.

20.      Due to procedural constraints and the attenuation between the first instance of discrimination, Plaintiff's receipt of the EEOC's first right-to-sue letter, Plaintiff's return to work, Defendants continued unlawful conduct thereafter, and Plaintiff's ultimate termination, Plaintiff could not allege the forthcoming factual allegations in Civil Action No.: 1:18-cv-002866 (TJK) as Plaintiff had not yet received his right-to-sue letter in regard to the facts alleged in this action; otherwise, Plaintiff would have failed to exhaust his administrative remedies.

21.      Plaintiff received his second, subsequent right-to-sue letter in regard to the forthcoming allegations and claims on May 16, 2019, thereby satisfying all pre-requisites to maintaining this action.

## II.      Plaintiff's Disability and Employment

22.      Plaintiff developed PTSD after exerting heroic rescue efforts at the Pentagon in the wake of 9/11.  PTSD is a physical and mental impairment that substantially limits numerous major life activities, including caring for himself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.

23.      Plaintiff's PTSD and the aforesaid symptoms are triggered by *inter alia* loud, unexpected noises, and posterior foot traffic, such as people walking behind him.

24.      From January 2013 until May of 2018, Plaintiff's disability did not affect his ability to perform the essential functions of his job.

25.      After the incidents alleged in Civil Action No.: 1:18-cv-002866, Defendants placed Plaintiff on medical administrative leave and ordered Plaintiff to attend a Fitness-for-Duty Evaluation ("FFD Evaluation") or face immediate termination.

26.      On August 8, 2018, Plaintiff objected to the FFD Evaluation on the grounds that

6

Defendants did not have authority to compel Plaintiff to attend the highly invasive, mentally-probative procedure.  The FFD Evaluation sought to extract information regarding some of the most sensitive incidents and information pertaining to Plaintiff's personal life and affairs.

27.    Defendants did not entertain Plaintiff's objection and simply reiterated that Plaintiff would be terminated if he did not attend the FFD Evaluation.

28.    On August 10, 2018 and over his objection, Plaintiff complied with Defendants mandate and attended part 1 of 2 of the FFD Evaluation.  Karen A. Singleton, M.D., MPH evaluated Plaintiff and found Plaintiff medically fit for duty.

29.    On August 16, 2018, Plaintiff attended part 2 of 2 of his FFD Evaluation. Douglas Craig, Psy.D also found Plaintiff to be psychologically fit for duty; however, Dr. Craig determined that Plaintiff may require an "accommodation for situational influences into workplace adjustment may be necessary."

30.    On August 24, 2018, Defendants received Dr. Singleton and Dr. Craig's reports and were placed on notice that Plaintiff was fit for duty.

31.    For the next 39 days, Plaintiff attempted to contact Defendants and repeatedly requested to return to work; however, Defendants ignored Plaintiff's repeated attempts and requests in callous disregard of Dr. Singleton and Dr. Craig's medical reports.

32.    On October 2, 2018, Plaintiff initiated the EEO's interactive process for the second time.

33.    Defendants knew Plaintiff was medically fit for duty; however, Defendants refused to allow Plaintiff to return to work in hopes that Plaintiff would resign in an attempt to constructively oust Plaintiff.

34.    Defendants aforesaid attempt to constructively oust Plaintiff was not their first

7

attempt to wrongfully discharge Plaintiff, nor was it the last.

### III.    Plaintiff's Return to Work

35.    On October 11, 2018 and left with no other option, Defendants begrudgingly instructed Plaintiff to report for duty the following Monday, October 15, 2018.   Defendants further advised Plaintiff that he had been "relocated to a new work station."

36.    Upon reporting for duty Defendants immediately resumed their discriminatory and retaliatory conduct.  The "new work station" Defendants had assigned Plaintiff was not a new *accommodating* work station; but rather, a work station that Defendants knew would subject Plaintiff to an even *worse* work environment than the unaccommodating cubicle Defendants assigned Plaintiff when OCF relocated on May 14, 2018.

37.    Defendants intentionally used misleading language in their October 11, 2018 letter to make it appear as though Defendants were complying with Dr. Craig's medical report with the intent to discriminate, humiliate, embarrass, harass, Plaintiff and in retaliation because Plaintiff initiated the EEO's Interactive Process for the second time.

38.    Harassed, humiliated, and ridiculed, Plaintiff did not quit; rather, Plaintiff spoke out and opposed Defendants' continued discriminatory and retaliatory misconduct and their failure to provide a reasonable accommodation in blatant disregard of Dr. Craig's medical report.

39.    Plaintiff, yet another victim of Defendants' discriminatory misconduct, became concerned not as an OCF employee, but as a citizen, that Defendants Collier-Montgomery and Sanford may not meet the ethical standards or be fit to hold public office and he spoke out, raising such concerns.

40.    On October 30, 2018, Plaintiff, for the second time, filed a formal charge of discrimination with the EEOC as a result of Defendants' continued discriminatory and retaliatory

conduct.

41.    Fearful that the EEOC would discover Defendants' abhorrent discriminatory actions, Defendants began to subject Plaintiff to even more frequent and pervasive discrimination by:

a.  Refusing to accommodate Plaintiff in utter disregard of Dr. Craig's report and Plaintiff's repeated requests;

b.  Exacerbating the severity of the unaccommodating work environment by assigning employees to work in each of the three (3) vacant cubicles directly behind Plaintiff before and/or after Plaintiff's return to work;

c.  Configuring the pod in a manner that maximized foot traffic, leaving the only opening into the pod directly next behind Plaintiff;

d.  Ignoring Plaintiff's numerous requests for an accommodation;

e.  Disregarding Plaintiff's reasonable accommodation suggestion/proposal to simply relocate from his unaccommodating "new work station" to one of the 8 vacant cubicles or 2 vacant offices, any of which would have better accommodated Plaintiff; and

f.  Harassing Plaintiff by hovering around his cubicle and repeatedly engaging in loud, boisterous conversations about non-work-related matters.

42.    Despite Defendants unrelenting efforts to oust him, Plaintiff continued to work and perform his duties, hoping that the EEOC's intervention would free Plaintiff from the debilitating work environment Defendants worked so hard to create.  Unfortunately, Defendants terminated Plaintiff before the EEOC was able to redress their actions.

43.    On November 28, 2018 and after learning that Plaintiff raised his concerns with Defendant Collier-Montgomery and Defendant Sanford's supervisor, Defendant Bennett, Defendants terminated Plaintiff.

44.    Defendants allege to have terminated Plaintiff because of a November 23, 2018 incident in which Plaintiff somehow "threatened the integrity of District government operations"

9

by transporting his co-worker's granddaughter approximately three blocks in a government vehicle in an emergency situation.

45.     It is clear that the November 23, 2018 incident is nothing more than a patently false, pretextual basis to cover up the real reason Defendants terminated Plaintiff: Defendants fired Plaintiff because he engaged in protected activity and made protected disclosures about Defendant Collier-Montgomery's unlawful actions and the discriminatory and retaliatory misconduct to which she subjected Plaintiff, day in and day out, month after month.

**FIRST CLAIM FOR RELIEF**
Violations of the Americans with Disabilities Act
(*Against the District of Columbia & District of Columbia Board of Elections and Ethics*)

46.     Plaintiff incorporates by reference all preceding paragraphs by reference as if fully set forth herein.

47.     At all times relevant to this action, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA") made in unlawful for Defendants to discriminate, refuse to provide a reasonable accommodation, or retaliatorily discharge Plaintiff because he had a disability and/or because Plaintiff spoke out against Defendants disability discrimination.

48.     At all times relevant to this action, Plaintiff was and is a person with a disability within the meaning of the ADA.  Plaintiff suffers from PTSD, which is a physical or mental impairment that substantially limits one or more of his major life activities, including Plaintiff's ability to regularly eat, sleep, learn, read, concentrate, think, communicate, and work.

49.     Defendants also regarded Plaintiff as having such an impairment.

50.     At all times relevant to this action, Plaintiff was and is and is a qualified individual within the meaning of the ADA. Plaintiff could perform his essential job functions with a reasonable accommodation, as evidenced by Defendant's recommendation to promote

Plaintiff, his performance reviews, his October 2018 return-to-work letter and numerous physicians' medical reports.

51.     At all times relevant to this action, Plaintiff was an employee and the District of Columbia and/or the DCBOE was Plaintiff's employer and a covered entity within the meanings of the ADA. The District of Columbia and/or the DCBOE engage in an industry affecting commerce and have more than 25 employees for each working day in each of 20 or more calendar weeks in the current and preceding years.

52.     At all times relevant to this action, Defendants Collier-Montgomery and Sanford were agents of Plaintiff's employer within the meaning of the ADA.

53.     At all times relevant to this action, Defendants actually or constructively knew of Plaintiff's disability, in that Defendants: (1) placed Plaintiff on medical administrative leave; (2) required Plaintiff to attend a FFD evaluation; (3) received medical reports that confirmed Plaintiff suffered from PTSD; (4) knew that Plaintiff may require an accommodation for his disability; and (4) received Plaintiff's numerous requests for a disability accommodation.

54.     Defendants intentionally, willfully, maliciously, and/or recklessly violated the ADA by:

a. Denying Plaintiff of his right to work for approximately 52 days after being placed on notice that Plaintiff was fit for duty;

b. Misleading Plaintiff to believe that he would be provided with an accommodating work station upon his return to work;

c. Failing to accommodate Plaintiff's disability in utter disregard of Dr. Craig's medical report;

d. Disparaging Plaintiff by telling OCF staff that Plaintiff would not be returning to work despite Dr. Singleton and Dr. Craig's medical reports finding Plaintiff fit for duty, or alternatively, without evidence or information as to Plaintiff's fitness for duty;

11

e.  Assigning employees to work in each of the 3 vacant cubicles directly behind Plaintiff despite the availability of 8 other cubicles and 2 offices which would have better accommodated Plaintiff's disability;

f.  Configuring the pod in a manner that maximized foot traffic, leaving the only opening into the pod directly behind Plaintiff with the intent of exacerbating Plaintiff's PTSD symptoms;

g.  Hovering around Plaintiff's cubicle and repeatedly engaging in loud, boisterous conversation about non-work-related matters;

h.  Manufacturing a frivolous, pretextual "reason" to terminate Plaintiff; and

i.  Terminating Plaintiff because of his disability or alternatively, because Plaintiff spoke out against Defendants' disability discrimination.

55.  As a direct and proximate result of Defendants' violations of the ADA, Plaintiff sustained, and will continue to sustain, economic injuries, emotional distress, pain and suffering.

56.  WHEREFORE, Plaintiff seeks judgment against Defendants jointly and severally, as well as compensatory damages in an amount to be determined at trial, but in no event less than $3,000,000.00, as well as his attorney's fees, costs, and all other injunctive, declaratory, and monetary relief available for the aforesaid violations of law.

## SECOND CLAIM FOR RELIEF
Violations of the Rehabilitation Act
(*Against the District of Columbia & District of Columbia Board of Elections and Ethics*)

57.  Plaintiff incorporates by reference all preceding paragraphs by reference as if fully set forth herein.

58.  At all times relevant to this action, the Rehabilitation Act of 1973, § 501 *et seq.* made in unlawful for Defendants to discriminate, refuse to provide a reasonable accommodation, or retaliatorily discharge Plaintiff because he had a disability and/or because Plaintiff spoke out against Defendants disability discrimination.

59.  At all times relevant to this action, Plaintiff suffered from PTSD, was and is a

12

person with a disability, and was a qualified individual within the meanings of the Rehabilitation Act. Defendants also regarded Plaintiff as having such impairment.

60. At all times relevant to this action, Plaintiff was an employee and the District of Columbia and/or the DCBOE, was Plaintiff's employer and a covered entity within the meanings of the Rehabilitation Act.

61. At all times relevant to this action, Defendants Collier-Montgomery and Sanford were agents of Plaintiff's employer within the meaning of the Rehabilitation Act.

62. At all times relevant to this action, Defendants had actual knowledge or constructive knowledge of Plaintiff's disability.

63. Defendants intentionally, willfully, maliciously, and/or recklessly violated the Rehabilitation Act by engaging in the unlawful conduct articulated in paragraph 54.

64. As a direct and proximate result of Defendants' violations of the Rehabilitation Act, Plaintiff sustained, and will continue to sustain, economic injuries, emotional distress, pain and suffering.

65. WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, as well as compensatory damages in an amount to be determined at trial, but in no event less than $3,000,000.00, as well as his attorney's fees, costs, and all other injunctive, declaratory, and monetary relief available for the aforesaid violations of law.

### THIRD CLAIM FOR RELIEF
Retaliation & Wrongful Termination in Violation of the First Amendment
(*Against All Defendants*)

66. Plaintiff incorporates by reference all preceding paragraphs by reference as if fully set forth herein.

67. At all times relevant to this action, the Free Speech Clause of the First

13

Amendment to the United States Constitution prohibited Defendants from retaliating or terminating Plaintiff's employment because Plaintiff engaged in constitutionally protected activity.

68.     As a concerned citizen, Plaintiff opposed actual or perceived discrimination in the workplace; spoke out against Defendants' refusal to reasonable accommodate persons with disabilities; opposed actual or perceived discriminatory promotional practices Defendants took against Plaintiff and his co-workers; opposed Defendants' violations of D.C. Codes §§ 5-117.05 and § 22-1319; initiated and participated in the EEO's Interactive Process; and filed formal complaints with the EEOC.

69.     Plaintiff engaged in constitutionally protected activity as he spoke out against Defendants' discriminatory and retaliatory misconduct, articulated in paragraphs 54 and 68 as a citizen concerned about Defendants Collier-Montgomery and Sanford's ethics and their fitness for office.

70.     The ethics and fitness for office of public officials are matters of public concern.

71.     Plaintiff's engagement in protected activity articulated was a complete, substantial, and/or motivating factor for Defendants' intentional, deliberate, willful, and/or reckless decisions to retaliate against Plaintiff and terminated Plaintiff's employment.

72.     Defendants acted under color of local, municipal, state, or federal law and deprived Plaintiff of the rights, privileges, and/or immunities secured to him by the Constitution and the laws of the United States.

73.     Defendants' retaliatory misconduct and the termination of Plaintiff's employment because of his engagement in protected activity violate the First Amendment.

74.     As a direct and proximate result of Defendants' actions, Plaintiff sustained, and

14

will continue to sustain, economic injuries such as wage loss, benefits, promotional opportunity, future employment/earning capacity, and damage to his professional reputation, as well as severe emotional distress, pain, and suffering.

75.    WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, as well as compensatory damages in an amount to be determined at trial, but in no event less than $5,000,000.00, punitive damages against Defendants Collier-Montgomery, Sanford, and Bennett in an amount to be determined at trial, as well as his attorney's fees, costs, and all other injunctive, declaratory, and monetary relief available for the aforesaid violations of law.

## FIFTH CLAIM FOR RELIEF
Wrongful Discharge in Violation of the D.C. Whistleblower Protection Act
(*Against All Defendants*)

76.    Plaintiff incorporates by reference all preceding paragraphs by reference as if fully set forth herein.

77.    At all times relevant to this action, the D.C. Whistleblower Protection Act ("DCWPA") D.C. Code § 1-615-51 *et seq*. prohibited Defendants from retaliating against Plaintiff, interfering with or denying Plaintiff of his rights, or terminating Plaintiff because he made protected disclosures or otherwise spoke out against Defendants' discriminatory and retaliatory misconduct.

78.    Plaintiff is an employee who, as a result of disclosing Defendant Collier-Montgomery and Defendant Sanford's unlawful discriminatory and retaliatory misconduct, abuse of authority, and ethics violations to their supervisor, Defendant Bennett, enjoyed the protection of the DCWPA.

79.    As a direct and proximate result of the protected disclosures Plaintiff made to

15

Defendant Bennett, Defendants engaged in systemic retaliation, harassed Plaintiff, and ultimately terminated Plaintiff's employment in violation of the DCWPA.

80.    As a direct and proximate result of Defendants' actions, Plaintiff sustained, and will continue to sustain, economic injuries such as wage loss, benefits, promotional opportunity, future employment/earning capacity, and damage to his professional reputation, as well as severe emotional distress, pain, and suffering.

81.    WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, as well as compensatory damages in an amount to be determined at trial, but in no event less than $5,000,000.00, punitive damages against Defendants Collier-Montgomery, Sanford, and Bennett in an amount to be determined at trial, as well as his attorney's fees, costs, and all other injunctive, declaratory, and monetary relief available for the aforesaid violations of law.

### SIXTH CLAIM FOR RELIEF
Wrongful Discharge in Violation of Public Policy
(*Against All Defendants*)

82.    Plaintiff incorporates by reference all preceding paragraphs by reference as if fully set forth herein.

83.    Plaintiff is an employee who made protected disclosures regarding Defendant Collier-Montgomery and Defendant Sanford's unlawful discriminatory and retaliatory misconduct, abuse of authority, and ethics violations.

84.    Completely or substantially motivated by Plaintiff's protected disclosures, Defendants engaged in systemic retaliation against Plaintiff, harassed Plaintiff, and ultimately terminated Plaintiff's employment in violation of public policy.

85.    As a direct and proximate result of Defendants' actions, Plaintiff sustained, and

16

will continue to sustain, economic injuries such as wage loss, benefits, promotional opportunity, future employment/earning capacity, and damage to his professional reputation, as well as severe emotional distress, pain, and suffering.

86.     WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, as well as compensatory damages in an amount to be determined at trial, but in no event less than $5,000,000.00, punitive damages against Defendants Collier-Montgomery, Sanford, and Bennett in an amount to be determined at trial, as well as his attorney's fees, costs, and all other injunctive, declaratory, and monetary relief available for the aforesaid violations of law.

**SEVENTH CLAIM FOR RELIEF**
Violations of the D.C. Human Rights Act
(*Against All Defendants*)

87.     Plaintiff incorporates by reference all preceding paragraphs by reference as if fully set forth herein.

88.     At all times relevant to this action, the D.C. Human Rights Act D.C. Code § 2-1401.01 *et seq.* ("DCHRA") prohibited Defendants from discriminating against Plaintiff on the basis of his disability and required Defendants to reasonably accommodate Plaintiff's disability.

89.     At all times relevant to this action, Plaintiff suffered from PTSD, was and is a person with a disability, within the meaning of the ADA.

90.     At all times relevant to this action, Plaintiff was and is a qualified individual within the meaning of the DCHRA.

91.     At all times relevant to this action, Plaintiff was an employee and the District of Columbia and/or the DCBOE was Plaintiff's employer and a covered entity within the meanings of the DCHRA.

92.    At all times relevant to this action, Defendants Collier-Montgomery and Sanford were agents of Plaintiff's employer within the meaning of the DCHRA.

93.    At all times relevant to this action, Defendants had actual knowledge or constructive knowledge of Plaintiff's disability.

94.    Defendants intentionally, willfully, maliciously, and/or recklessly discriminated against Plaintiff by engaging in the aforesaid unlawful conduct articulated in this Complaint.

95.    Defendants' engagement in such misconduct violates the DCHRA.

96.    As a direct and proximate result of Defendants' discrimination, Plaintiff sustained, and will continue to sustain, economic injuries, emotional distress, pain and suffering.

97.    WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, as well as compensatory damages in an amount to be determined at trial, but in no event less than $3,000,000.00, punitive damages against Defendants Collier-Montgomery, Sanford, and Bennett in an amount to be determined at trial, as well as his attorney's fees, costs, and all other injunctive, declaratory, and monetary relief available for the aforesaid violations of law.

**EIGHTH CLAIM FOR RELIEF**
Intentional Infliction of Emotional Distress
(*Against All Defendants*)

98.    Plaintiff incorporates by reference all preceding paragraphs by reference as if fully set forth herein.

99.    Defendants intentionally or recklessly engaged in extreme and outrageous conduct by:

   a. Denying Plaintiff of his right to work for 52 days after receiving medical reports placing Defendants on notice Plaintiff was fit for duty;

   b. Misleading Plaintiff to believe that he would be provided with an

18

accommodation upon his return to work;

c. Failing to accommodate Plaintiff's disability in utter disregard of Dr. Craig's medical report;

d. Disparaging Plaintiff by telling OCF staff that Plaintiff would not be returning to work in complete ignorance and disregard of Dr. Singleton and Dr. Craig's medical reports, or alternatively, without evidence or information indicating Plaintiff was unfit for duty;

e. Assigning employees to work in each of the 3 vacant cubicles directly behind Plaintiff despite the availability of 8 other cubicles and 2 offices which would have better accommodated Plaintiff's disability;

f. Configuring the pod in a manner that maximized foot traffic, leaving the only opening into the pod directly next behind Plaintiff with the intent of exacerbating Plaintiff's PTSD symptoms;

g. Hovering around Plaintiff's cubicle and repeatedly engaging in loud, boisterous conversation about non-work-related matters;

h. Manufacturing a frivolous, unjustified "reason" to terminate Plaintiff; and

i. Terminating Plaintiff.

100. Defendants' unlawful conduct is far more severe than a mere "employer-employee conflict" and Defendants' actions are outrageous, extreme, and atrocious in nature as to extend beyond all possible bounds of decency.

101. The aforesaid conduct utterly intolerable in a civilized community.

102. As a direct and proximate result of Defendants' aforesaid intentional or reckless conduct, Plaintiff suffered extreme emotional distress which caused Plaintiff loss of sleep, weight gain, numerous upset stomachs and related abdominal pain, loss of appetite, and other physical manifestations.

103. WHEREFORE, Plaintiff seeks judgment against Defendants jointly and severally, as well as compensatory damages in an amount to be determined at trial, but in no event less than $1,000,000.00, punitive damages against Defendants Collier-Montgomery,

Sanford, and Bennett in an amount to be determined at trial, as well as his attorney's fees, costs, and all other injunctive, declaratory, and monetary relief available for the aforesaid violations of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in Plaintiff's favor, jointly and severally, and further award:

a. Declaratory relief holding that Defendants discriminated against Plaintiff in violation of the ADA;

b. Declaratory relief holding that Defendants discriminated against Plaintiff in violation of the Rehabilitation Act;

c. Declaratory relief holding that Defendants retaliated against and wrongfully discharged Plaintiff and in violation of Title VII;

d. Declaratory relief holding that Defendants retaliated against and wrongfully discharged Plaintiff and in violation of 42 U.S.C. § 1983;

e. Declaratory relief holding that Defendants retaliated against and wrongfully discharged Plaintiff and in violation of the D.C. Whistleblower Protection Act;

f. Declaratory relief holding that Defendants wrongfully discharged Plaintiff and in violation of D.C. public policy;

g. Declaratory relief holding that Defendants discriminated, retaliated, and wrongfully discharged Plaintiff and in violation of the D.C. Human Rights Act;

h. Injunctive relief ordering Defendants to reinstate Plaintiff to his prior position, with such retroactive promotions and benefits as Plaintiff would have received had he not been terminated;

i. Injunctive relief ordering Defendant to provide Plaintiff reasonable accommodations necessary for Plaintiff to perform his essential job functions;

j. An order requiring Defendants to undergo periodic ADA, Title VII, and D.C. Whistleblower Protection Act training;

k.  Back pay with interest;

l.  In the event reinstatement is not granted, front pay;

m.  The value of any lost benefits with interest;

n.  Pre-judgment and post-judgment interest at the highest lawful rate;

o.  Compensatory and consequential damages in excess of $75,000.000 in an amount to be determined at trial;

p.  Punitive damages against Defendants Collier-Montgomery, Sanford, and Bennett in an amount to be determined at trial;

q.  Reasonable attorney's fees and litigation costs; and

r.  Any other such relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

This, the 19th day of June, 2019.

Respectfully submitted,

PAYAM ZERAAT

By:   /S/ MICHAEL A. YODER
Michael A. Yoder, Esq. [1600519]
SLOCUMB LAW FIRM, LLC
777 6th Street NW
Suite 520
Washington, D.C. 20001
Tel: (202) 737-4141
Fax: (202) 710-9933
myoder@slocumblaw.com